RECEIVED

FEB 1 1 2002

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

MAUREEN THERESE KENNY          )
                               )
              Plaintiff,        )
                               )
       v.                       )    No.
                               )
LOYOLA UNIVERSITY OF CHICAGO    )
              Defendant         )

**02C 1006**

JUDGE MANNING

**DOCKETED**

FEB 1 2 200

**JURY TRIAL DEMANDED**

MAGISTRATE JUDGE SCHENKIER

COMPLAINT - COUNT I

NATURE OF THE ACTION

1.     Count I is brought against Loyola University of Chicago
("Loyola") under Title III of the Americans With Disabilities Act
of 1990 (the "ADA") and Title I of the Civil Rights Act of 1991.

2. For purposes of Count I, The ADA at 42 U.S.C. 12182(a)
effective January 26, 1992 provides as follows:

No individual shall be discriminated against on the basis of
disability in the full and equal enjoyment of the goods, services,
facilities, privileges, advantages, or accommodations of any place
of public accommodation by any person who owns, leases (or leases
to), or operates a place of public accommodation.

3. Count I is an action against defendant for its failure to
provide public accommodation for disabled students in accordance
with the ADA.

JURISDICTION AND VENUE

4.     Jurisdiction of this Court for Count I is invoked
pursuant to 28 U.S.C. Sections 451, 1331, 1337, 1343, and 1345 and
42 U.S.C. 12101 et seq.   42 U.S.C. 12133 provides that the
remedies, procedures and rights set forth in section 794a of Title

29 shall be the remedies, procedures and rights this sub-chapter provides to any person alleging discrimination on the basis of disability in violation of section 12132 of this Title. That statute in turn incorporates the remedies, procedures and rights set forth in section 717 of the Civil Rights Act at 42 U.S.C. 2000e-16. And the remedies at 42 U.S.C. 2000d et seq for any person aggrieved by any act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of title 29.

5. Plaintiff, Maureen Therese Kenny, ("Kenny") is a citizen of the United States and is a resident of Cook County, State of Illinois.

6. Loyola University of Chicago does business in the Northern District of Illinois, maintains Simpson Hall and Kenmore Hall as residence dormitories for students in the Northern District of Illinois, and is the District in which the Loyola maintains its principal administrative business office.

7. Plaintiff was enrolled as a part-time student of Loyola University in its paralegal program beginning in August of 2000.

<u>PARTIES</u>

8. Loyola University of Chicago ("Loyola") is an employer in Cook County, Illinois and at all times relevant to this complaint has employed more than 500 employees in the United States.

9. At all relevant times Loyola has continuously been engaged in an industry affecting commerce within the meaning of Section 101(5) of the ADA, 42 U.S.C. Section 12181, and Section 107(7) of the ADA, 42 U.S.C. Section 12117(7), which incorporates

2

by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. Section 2000e(g) and (h).

10. At all relevant times Loyola has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. Section 12111(2).

11. At all relevant times, Loyola has been a post graduate private school or other place of education within the meaning of 42 U.S.C. Section 12181(7)(J).

12. At all times during from August 21, 2000 to the present, defendant owned or leased Simpson Hall and Kenmore Hall for the purpose of providing dormitory living quarters for students attending Loyola University in Chicago. Both Kenmore Hall and Simpson Hall are located within the City limits of Chicago, Illinois.

13. At all relevant times, Kenmore Hall and Simpson Hall have each been a place of public accommodation within the meaning of 42 U.S.C. Sections 3601-3631 and are thus subject to the anti-discrimination provisions at 42 U.S.C. 12182(a).

14. The construction of Simpson Hall was completed in 1991 after the passage of the ADA.

15. At all times from August 21, 2000 to the present, defendant owned or leased the vehicles used for transportation of students on the campus at Loyola.

16. At all relevant times the buses and other vehicles made available by Loyola for transportation by students and faculty at the Loyola campus have been a place of public accommodation within the meaning of 42 U.S.C. Sections 3601-3631.

3

17. Plaintiff paid in full for a dormitory room at Simpson Hall for the Fall, 2000 semester and the Spring 2001 semester at Loyola including a pre-paid meal plan at Loyola cafeterias.

18. Plaintiff resided at defendant's Simpson Living and Learning Center ("Simpson Hall") from 21-August-2000 while she attended Loyola until January 24, 2001, when she was moved by defendant to Kenmore Hall without Plaintiff's consent, against her will, and while she was not present. From January 24, 2001 until on or about February 12, 2001, plaintiff resided at Kenmore Hall, until defendant caused plaintiff to be forcibly removed from Kenmore Hall without her consent onto the street.

19. At the time of such removal of plaintiff to the street, defendant's actions caused plaintiff to lose all her clothes and personal items in her room including her computer except for those clothes she was wearing, such that plaintiff was limited to the clothes she was wearing for living on the streets in the middle of winter.

20. Defendant did not evict plaintiff from Kenmore Hall in accordance with the laws of the City of Chicago relating to eviction.

21. Plaintiff has a disability within the meaning of 28 CFR 104 and the Americans with Disabilities Act (the ADA) at 42 U.S.C. 12131(2) because her disability substantially limits her performance of a major life activity. Specifically, the plaintiff has hearing impairment, visual impairment, fibromyalgia syndrome, osteoarthritis, hypertension, neurological ophtomological visual

4

impairment of diplopia and exophoria, morbid obesity, edema (leg swelling), carpal tunnel syndrome and is mobility challenged.

22. Plaintiff's fibromyalgia syndrome, osteoarthritis, edema, and morbid obesity impair her mobility to the extent that plaintiff can only walk short distances with the aid of a service dog.

23. Plaintiff's fibromyalgia syndrome, osteoarthritis, edema, morbid obesity and carpel tunnel syndrome impair her ability to use bathroom facilities including the toilet, shower and bathtub and mirror.

24. Plaintiff's carpel tunnel syndrome and osteoarthritis in the hands prevents plaintiff from preparing handwritten notes, and from typing papers and other homework.

25. Plaintiff's hearing impairment impedes her ability to listen to classroom lectures and impairs her ability to hear fire alarms outside her dormitory room.

26. Since February 1, 1989, Plaintiff has been a person with a disability within the meaning of Section 223 of the Social Security Act (42 U.S.C. 423), and within the meaning of 42 U.S.C. 12102(2).

27. Plaintiff is a person with a disability within the meaning of 42 U.S.C. 12131(2).

28. Plaintiff was a student at Loyola from August 21, 2000 through February 12, 2001, and seeks readmission as a student at Loyola.

29.  As a student at Loyola, plaintiff was required to submit her medical records to Loyola for the purpose of obtaining disability accommodations.

30.  Plaintiff complied with the requirement that she submit her medical records to Loyola by submitting medical records to Amy Maggie Rodgers, ADA Coordinator for students with disabilities; Dr. Lisa Kerr, Phd. Director of ADA Services for Students with Disabilities; Dr. Linda Deanna, Director of Residence Life and Dean; Dr. Dan Barns, Dean of Student Services.

31.  Plaintiff is indigent and wholly dependant on public assistance and meets the income requirements for eligibility for low income housing.

32.  Plaintiff has received social security disability benefits in the form of supplemental security income since February of 1989.

33.  Loyola knew of plaintiff's status of eligibility to receive disability payments from social security in September of 2001.

34.  In July of 2000, Plaintiff while residing in the All American Nursing Home, Chicago, Il prior to acceptance as a Loyola University Institute for Paralegal Studies Students notified Loyola of her disabilities.

35.  Loyola received a discharge from the All American Nursing Home's  signed by Bharat Shah M.D., who gave the discharge papers to Loyola with the list of medications in plaintiff's file.

6

36. Phot Luisiri, M.D., a Rheumatologist at the University of Chicago, ordered a service dog for the plaintiff in 1996 . Plaintiff's current physician, Dr. Bharat Shah confirmed the need for a service dog for plaintiff's disabilities.

37. In June, 2000, Plaintiff provided Loyola with medical documentation, audio-gram tests results, and letters from Plaintiff's doctors which verified Plaintiff's multiple disabilities of: hearing impairment, neuro-opthomological visual impairment and mobility impairment. Plaintiff's doctors made recommendations to Loyola on behalf of plaintiff, their patient, for suitable and appropriate auxiliary aides and ADA-accommodations that would mitigate the effect of Plaintiff's disabilities in pursuit of an education.

38. In June, 2000, Plaintiff requested that Plaintiff's Dorm Room and bathroom be totally in compliance with all the ADA guidelines and regulations for a person with multiple disabilities who was also hearing impaired and mobility challenged.

39. Prior to plaintiff's acceptance of her admission to Loyola, Loyola advised plaintiff that her living quarters at Simpson Hall would comply with the ADA.

### PLAINTIFF'S REQUEST FOR DISABILITY ACCOMMODATIONS

40. Plaintiff's multiple disabilities of: fibromyalgia syndrome, morbid obesity, carpal tunnel syndrome, and severe osteo-arthritis with bone spurs restrict plaintiff's mobility.

41. Plaintiff requested transportation accommodation including the right to use the Loyola shuttle bus to transport Plaintiff

7

accompanied by her service dog, from Simpson Hall Dormitory located at the Defendant's Lake Shore Campus to Plaintiff's classes at Lewis Towers which were located at Defendant's Water Tower campus on Michigan Avenue located near Chicago's Loop Business District. Plaintiff also requested transportation accommodation during the hours from 4:00 p.m. to 6:00 a.m. which Defendant Loyola University had already routinely granted similarly situated able-bodied Loyola University students through Defendant's 8-RIDE VAN transportation service.

42. At the time Loyola owned or leased a fleet of busses which would accommodate plaintiff's request for accessibility.

43. The ADA requires that defendant's student transportation be available to disabled students.

44. The ADA regulations require that transportation accommodations allow medically prescribed service dogs to assist the disabled while using such transportation.

45. Plaintiff uses a doctor prescribed service dog, a blue merle collie, named Mr. Lex.

46. Plaintiff uses the service dog to carry items, such as books, in a canine back pack. Plaintiff also uses the service dog to access stairs and have the service dog retrieve items on the floor for plaintiff.

47. Plaintiff furnished certification papers to defendant for the service dog on September 11, 2000. Loyola gave conditional acceptance to the use of a service dog.

48. Loyola insisted on a certification from a rheumatologist regarding her service dog.

8

49. Defenda. denied plaintiff the right use her service dog on the bus on or about January 10, 2001.

50. Plaintiff's service dog, Mr. Lex, is trained to bark when a visitor is knocking at the dorm room door. Plaintiff was disciplined for the barking by Mr. Lex when someone was at the door.

51. An Australian Shepard, named "Rocky", a pet dog owned by Art Munins, an able bodied student at Loyola, lived next door to Kenmore Hall. Rocky barked virtually all day and incident reports were written up as to Rocky's nuisance barking. Plaintiff's service dog, Mr. Lex, was trained to bark when people came to the door due to plaintiff's hearing impairment. Plaintiff was disparately treated in that she was discriminated against by Defendant, on the basis of that she was disciplined when her service dog barked as trained to do when people knocked on the plaintiff's door. The owner of Rocky, a dog that frequently barked, was not disciplined.

52. Simpson Hall provided for mail delivery at the dorm but Kenmore Hall did not.

53. At all times relevant to this complaint, Loyola had officially closed Kenmore Hall to all student residents prior to plaintiff's forced admission against her will. At all times relevant to this complaint, Kenmore Hall was not habitable in accordance with the Chicago Municipal Ordinance Code for many reasons including, but not limited to, the lack of smoke detectors, the lack of heat, the lack of operating elevators, the lack of fire extinguishers and general disrepair.

54. On or about January 24, 2001, Plaintiff requested accommodation for mail delivery after she was moved to Kenmore Hall against her will.

55. On January 10, 2001 plaintiff pursued her rights to use her dog on the shuttle bus by contacting the Cook County State's attorney.

56. At the time Loyola moved plaintiff into Kenmore Hall, the dormitory did not have heat that reliably worked, it did not have working elevators, it did not have smoke detectors, it did not have computer laboratories, it did not have cafeterias, and was under construction at the time she was moved to Kenmore Hall.

57. Virtually all other students residing at dormitories at Loyola had mail delivery to their dormitory.

58. Loyola refused to accommodate plaintiff's request for mail delivery and required plaintiff to retrieve her mail at Simpson Hall, three blocks away.

59. Plaintiff has carpel tunnel syndrome and this disability impairs plaintiff's ability to type and write notes by hand.

60. On or about December 15, 2000, Plaintiff requested that Loyola provide a lap top computer with voice recognition software as a disability accommodation.

61. The voice recognition lap top computer could receive vocal input either from a taped class room session or directly from the professors and print out verbatim class room notes and allow plaintiff to have those notes.

62. Loyola denied plaintiff's request to provide a voice recognition computer.

63. Loyola provided lap top computers t students without disability if those students participated in Loyola's athletic program.

64. Loyola provided stationary computers at the dormitory at Simpson Hall for use by students.

65. Those computers did not contain voice recognition software which would enable plaintiff to prepare her papers and home work.

66. On or about December 15, 2000 Plaintiff requested that defendant add voice recognition software to one of the computers in Simpson Hall which was available to students.

67. Loyola declined plaintiff's request to add voice recognition software to one of the stationary computers at Simpson Hall.

68. On information and belief, the voice recognition software that plaintiff requested for the stationary computer would have cost under $100.00.

69. Although plaintiff was indigent living on her social security disability check of about $500 a month, she offered to pay for the voice recognition software if Loyola would allow her to install that software into the computer at Simpson Hall.

70. Loyola denied plaintiff's request that plaintiff be allowed to pay for and have installed the voice recognition software.

71. Loyola's denial of voice recognition software either in the form of a lap top computer or a stationary computer effectively prevented plaintiff from meeting her course load at Loyola. The voice recognition software would have allowed plaintiff to prepare

11

papers and homework which her disability of carpal tunnel syndrome prevented.

72. Plaintiff submitted to Loyola the recommendations from doctors who stated that a voice recognition computer would assist plaintiff in accommodating her hearing impairment disability. Her hearing impairment made it difficult for plaintiff to hear the class room lectures, and her carpel tunnel syndrome disability prevented her from taking notes, from preparing homework and from preparing papers without voice recognition software.

73. On or about December 1, 2000 Plaintiff requested a visual fire alarm and a TTD text phone inside her dorm room at Simpson Hall. Later when plaintiff was moved to Kenmore Hall, she requested a TTD text phone and a visual fire alarm in Kenmore Hall.

74. The ADA standards require that a permanent audible and visual emergency warning system be installed in all adaptable dormitory rooms on an as needed basis at the request of an environmentally limited occupant. The visual emergency warning system for the hearing impaired occupant shall be arranged so that the flashing light beam is visible in all room of the dwelling unit.

75. Loyola refused to equip plaintiff's room in Simpson Hall and in Kenmore Hall with a visual fire alarm or a TTD text phone.

76. The ADA requires that the defendant furnish for hearing impaired students a TTD text phone and a visual fire alarm inside the hearing impaired person's dormitory room at all times.

77. Plaintiff was especially concerned regarding fire because Loyola permitted students to burn candles in their dorm rooms, without discipline and this practice created a fire hazard.

12

Moreover, plainti.... was mobility impaired and ...icuation from the fifth floor would have been difficult for plaintiff without an elevator which would not be in operation during a fire.

78. At all relevant times to this complaint, defendant did not have an area of rescue assistance at Simpson Hall in the event of a fire.

79. On or about December 1, 2000, Plaintiff requested an area of rescue assistance be available in the event of a fire at Simpson Hall.

80. Defendant refused to provide an area of rescue assistance at Simpson Hall.

81. On or about December 1, 2000, Plaintiff requested a power assisted door at Simpson Hall to assist in opening and closing the door to her dorm room. Defendant refused to provide a power assisted door at Simpson Hall.

82. On or about December 1, 2000, Plaintiff requested that the bathroom in Simpson Hall provide disability accommodations for her that comply with the ADA Accessibility Standards (See 28 CFR Appendix A to Part 36) as follows:

a. That the bathroom contain a mirror tilt meeting the ADA Specification Standards;

b. That the toilet stall available to plaintiff be widened to ADA Specification Standards because it was too narrow to be handicapped accessible.

c. That the toilet contain hand bars pursuant to ADA Accessibility Specification Standards;

d. That the toilet contain hand rails pursuant to ADA Accessibility Specification Standards;

e. That the shower stall be widened pursuant to ADA Accessibility Specification Standards to accommodate her disability;

f. That the shower stall provide a seat pursuant to ADA Accessibility Specification Standards;

g. That the shower stall provide a soap holder pursuant to ADA Accessibility Specification Standards;

h. That the shower provide a sixty-three inch hose with a hose with a shower head pursuant to ADA Accessibility Specification Standards;

i. That the shower stall be furbished with ADA-compliant bathroom hardware hot and cold levers pursuant to ADA Accessibility Specification Standards.

83. At all relevant times to this Complaint, defendant did not have the following at either Simpson Hall or Kenmore Hall:

a. A bathroom containing a mirror tilt meeting the ADA Specification Standards;

b. A toilet stall available to plaintiff at a width meeting ADA Specification Standards;

c. A toilet that contained hand bars pursuant to ADA Accessibility Specification Standards;

d. A toilet that contained hand rails pursuant to ADA Accessibility Specification Standards;

e. A shower with a width pursuant to ADA Accessibility Specifications Standards;

f. A shower stall with a seat pursuant to ADA Accessibility Specification Standards;

14

g.   A shower stall with a soap holder pursuant to ADA Accessibility Specification Standards;

h.   A shower with a sixty-three inch hose with a hose and shower head pursuant to ADA Accessibility Specification Standards;

i.   A shower stall furbished with ADA-compliant bathroom hardware hot and cold levers pursuant to ADA Accessibility Specification Standards.

84. On or about December 1, 2000, Plaintiff gave defendants a copy of 28 CFR .Ch.1 (7-1-96 Edition) Pt. 36, to each of the following employees of the Defendant: Amy Maggie Rogers, to Dr. Lisa Kerr, Phd. and to the Director of Residence Life and Dean of Students, Dr. Linda Deanna, PhD.

85.  On or about December 1, 2000, Plaintiff gave defendants a copy of  The Americans with Disabilities Act, Title II Technical Assistance Manual published November 1993.

86.  On or about December 1, 2000, Plaintiff gave defendant a copy of ADA Compliance Materials pamphlet entitled "Areas of Rescue Assistance ADAAG 4.3.11".

87.  On or about December 1, 2000, Plaintiff gave defendant a copy of ADA Compliance Materials pamphlet entitled "Toilet Stalls ADAAG 4.17".

88.  On or about December 1, 2000, Plaintiff gave defendant a copy of ADA Compliance Materials pamphlet entitled "Accessible Route ADAAG 4.3".

89.  On or about December 1, 2000, Plaintiff also gave a copy of," THE ADA COMPLIANT SCHOOL " which is published by the U.S. Department of Justice-ADA Office of Civil Rights and is an ADA-

regulations handbook for a college or university's compliance with the ADA to each of the following employees of the Defendant: Amy Maggie Rogers, to Dr. Lisa Kerr, Phd and to the Director of Residence Life and Dean of Students, Dr. Linda Deanna, PhD.

90. Loyola was required to meet the bathroom accessibility requirements. 56 Fed Reg. 35464, 35466. (To be codified at 36 CFR pt 1191 Sections 4.1.2(6), 4.1.3(11).

91. On or about December 15, 2000, Plaintiff requested disability accommodations at the Simpson Hall cafeteria as required by the ADA Accessibility Standards (see 28 CFR Appendix A to Part 36) including but not limited to a handle on the juice dispenser.

92. On or about December 1, 2000, defendant's cafeteria at Simpson Hall did not meet the following ADA Accessibility Standards:

a.  wheel chair accessibility;

b.  a handle on the juice dispenser; and

c.   tray slides mounted no higher than 34 inches above the floor.

93. On or about December 1, 2000, Plaintiff requested expedited check out in the cafeteria due to the difficulty she had standing in line as required by the ADA Accessibility Guidelines.

94. Plaintiff had difficulty standing for long period due to her morbid obesity and her fibromyalgia.

95. Loyola refused to accommodate plaintiff's request for an expedited check out in the cafeteria line.

96. When defendant placed plaintiff in a room at Kenmore Hall, the bath tub provided for plaintiff's use did not comply with the ADA Accessibility Guidelines for the following reasons:

a.   The bath tub was too small;

b.   The bath tub did not have the required seat;

c.   The bath tub did not have the required hand rails.

97.   Immediately after being moved by the defendant into Kenmore Hall, Plaintiff requested disability accommodations meeting the ADA Accessibility Guidelines for the bath tub in Kenmore Hall so that the bath tub would be the required size, have the required seat and have the required handrails.

98.   Plaintiff needed the bath tub disability accommodations at Kenmore Hall because of her mobility impairments.

99.   Loyola refused to accommodate plaintiff's request for disability accommodations for the bath tub at Kenmore Hall.

100.   Simpson Hall and Kenmore Hall each had more than 100 dormitory rooms.

101. The ADA Administrative Standards require with respect to Hotel, motels, dormitories, and other establishments: Four percent of the first 100 rooms and approximately two percent of rooms in excess of 100 must be accessible to both persons with hearing impairments (i.e. contain visual alarms, visual notification devices, volume control telephones and an accessible electrical outlet for a TDD text telephone) and to persons with mobility impairment.   Moreover, a similar percentage of additional rooms must be accessible to persons with hearing impairments.   In addition, where there are more than 50 rooms, approximately one

17

percent of rooms must be accessible with a special roll-in transfer shower.  Sections 9.1-9.4)

102. In restaurants, generally all dining areas and five percent of fixed tables (but not less than one) must be accessible.

103.  Every public and common use bathroom must be handicap accessible. Generally only one stall must be accessible (standard five by five feet).  When there are six or more stalls, there must be one accessible stall and one stall that is three feet wide Section 4.1.3(11); 4.22.4).

104. Plaintiff was refused full and equal enjoyment or was denied the opportunity to participate in or benefit from services at Loyola because of her disability.

105. Plaintiff was denied reasonable accommodations because of defendant's failure to modify policies, practices, or procedures, when such modifications were necessary to provide goods, services, and accommodations to individuals with disabilities.

106.  Plaintiff was denied  reasonable accommodations when she was placed in Kenmore Hall which was under construction and unfit for habitation at the time plaintiff was placed in the dormitory.

107.  Loyola  denied  plaintiff's  request  for  disability accommodation regarding transportation with her service dog until January 23, 2001, when Loyola purported to grant disability accommodation.  However, before Loyola actually had to implement any of the proposed disability accommodations, Loyola expelled plaintiff on or about January 24, 2001.

108. Defendant's actions constitute a policy that prohibits individuals with disabilities, namely plaintiff, from enjoying a dormitory with disability accommodations and thus preventing plaintiff from enjoying the advantages and benefits of a public accommodation and their attempts to enforce such a policy violate the ADA.

109. Defendant's actions of expelling plaintiff rather than providing disability accommodations prevented plaintiff from enjoying an education at Loyola.

110. Plaintiff seeks readmission to Loyola as a student in paralegal studies.

111. There is no plain and adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE Plaintiff respectfully that this court:

a. Grant a temporary and permanent injunction enjoining defendants, their officers, successors, assigns, and all persons in active concert or participation with them, from engaging in any practice or activity which discriminates on the basis of disability and specifically from attempting to ban plaintiff from pursuing academic studies directly or indirectly;

b. Order defendant to reinstate plaintiff as a student at Loyola with full disability accommodation made available to her including a computer with voice recognition software and the ability to prepare typed class room notes;

c. Order defendants to institute and carry out policies, practices, and programs which provide equal opportunities for individuals with disabilities;

d.    Award plaintiff her costs and reasonable attorneys fees as
provided by the ADA, 42 U.S.C. Sections 12188(a)(1), 12205 [ADA
Sections 308(a)(1), 505];

e.    Grant such further relief as the Court deems just and
proper.

COUNT II

PLAINTIFF'S CLAIM UNDER SECTION 504 OF

THE REHABILITATION ACT OF 1973

112. Plaintiff incorporates paragraphs 1 through 111 of Count
I in this Count II by reference and re-alleges each paragraph in
this Count II.

113. Count II is an action against defendant under Section 504
of the Rehabilitation Act of 1973, 29 U.S.C. 701 et seq. for its
wilful discrimination against plaintiff to deny her access to
Loyola as a student because of her disabilities and corresponding
need for reasonable accommodation and Loyola's wilful retaliation
against Kenny for her claims and assertions of her need for
disability accommodations.

114. 29 U.S.C. 794(a) provides in relevant part, "No otherwise
qualified individual with a disability in the United States, as
defined in section 706(20) of this title, shall, solely by reason
of her or his disability, be excluded from the participation in, be
denied the benefits of, or be subjected to discrimination under any
program or activity receiving Federal financial assistance or under
any program of activity conducted by any Executive agency or by the
United States Postal Service.   The head of each such agency shall
promulgate such regulations as may be necessary to carry out the

20

amendments to this section made by the Rehabilitation Comprehensive Services, and Developmental Disabilities Act of 1978."

115. Jurisdiction of this Court for Count II is invoked pursuant to 29 U.S.C. 701 et seq, and 28 CFR 36.501(a).

116. Loyola is a college, university, or other post secondary institution, or a public system of higher education.

117. Loyola receives federal Financial Assistance, including but not limited to federal funding assistance for educational loans for certain students attending Loyola.

118. Plaintiff has a disability within the meaning of 28 CFR 104; Section 504 of the Rehabilitation Act of 1973 because her disability substantially limits her performance of a major life activity. Specifically, the plaintiff has hearing impairment, visual impairment, fibromyalgia syndrome, osteoarthritis, hypertension, neurological ophtomological visual impairment of diplopia and exophoria, morbid obesity, edema (leg swelling), carpal tunnel syndrome and is mobility challenged.

119. Plaintiff is an otherwise qualified handicapped person within the meaning of 29 U.S.C. 794.

120. Plaintiff met all of the academic requirements for admission to Loyola for the purpose of pursuing paralegal studies.

121. Plaintiff can meet the paralegal program's requirements at Loyola if its program is modified to accommodate plaintiff by providing plaintiff with a computer capable of using voice recognition software and a recording of class room lectures, whether by tape recorder or a voice recognition computer.

21

122. Plaintiff's hearing impairment prevents her from adequately hearing classroom lectures without an accommodation such as a recording device that can later be transcribed.

123. Plaintiff's carpel tunnel syndrome prevents plaintiff from hand-writing or typing required homework and papers and from taking classroom notes.

124. Plaintiff can meet the paralegal program's requirements at Loyola if its program is modified to accommodate plaintiff by providing plaintiff with a computer capable using voice recognition software and a recording of class room lectures, whether by tape recorder or a voice recognition computer.

125. Plaintiff submitted doctors reports to defendant detailing that she needed the accommodation of a voice recognition computer.

126. Defendant's denial of an accommodation that permits plaintiff to use voice recognition software in effect denied plaintiff the ability to participate in the educational program for which she was enrolled at Loyola because of her hearing impairment and her inability due to carpel tunnel syndrome, to take extensive handwritten notes or to type extensively.

127. Plaintiff is otherwise able to meet the requirements of the curriculum at Loyola, despite her disabilities.

128. After disputing plaintiff's right to disability accommodation throughout the academic semester beginning August 2000, Loyola issued a letter on January 23, 2001 advising plaintiff that full accommodations would be made.

129.   On January 24, 2001, Loyola expelled plaintiff as a student.

130. Other non-disabled students were provided the basis for the expulsion charges against them and given an opportunity to defend themselves.

131.   When Loyola provided Kenny with a notice of allegations against her, they did not indicate who made the allegations or the specific allegations of the charges against prior to her expulsion.

132.   Kenny was not given the right to review the charges against her at a time when she was not ill with a communicable disease.

133.   Kenny's appeal was conducted on or about February 12, 2001 at a time she could not attend due to her communicable disease when the was under a doctors care.

134.   Kenny's doctors, Sandra Hare, M.D. and Bharat Shah, M.D. notified Loyola of Kenny's illness prior to the hearing dates.

135.   Ms. Kenny was not given a chance to attend the hearing on January 24, 2001, because she was ill on that date, and was not able to attend the hearing because she had a communicable disease.

136. Loyola never offered Kenny a chance to defend the reasons for expulsion.

137. Loyola treated Kenny differently from other able bodied students under threat of expulsion in that other able bodies students were advised of the changes against them and given time to prepare a defense to the charges.

138.   In fact the charges against Kenny were false and the real reason for expelling Kenny was to avoid the disability accommodations required by the ADA to accommodate Kenny.

139.   Loyola treated plaintiff differently from other able bodied students under threat of expulsion in that other able bodies students were advised of the changes against them and given time to prepare a defense to the charges.

140.   Defendant's expulsion of plaintiff was a retaliation against the plaintiff because she requested extensive disability accommodation.

141.   Defendant expelled plaintiff in order to avoid providing disability accommodations as plaintiff requested.

142.   When plaintiff was expelled, she became homeless, and all her property was thrown out on the street, including her medicine and clothes during the winter.

143.   Plaintiff was limited to one pair of clothes for the winter after she was locked out of Kenmore Hall and her clothes stolen at the point of their removal from Kenmore Hall.

144.   Defendant's failure to provide access to people with disabilities to facilities and programs funded with federal monies so as to offer them benefits equal to that offered to people without disabilities is a violation of Section 504 of the Rehabilitation Act of 1973.

145.   As a proximate result of Defendant's wrongful removal and lockout of plaintiff from Simpson Hall and her removal to Kenmore Hall, plaintiff suffered compensatory damages as follows:

a.   She was denied the right to live in a habitable building for which she had paid and lost the money which she had paid for accommodations at Simpson Hall;

b.   She was required to live at Kenmore Hall which was without adequate heat, without operating elevators, without mail delivery; without fire alarms and smoke detectors, and without an on site cafeteria;

c.   she was denied convenient access to computer technology for her studies; and

d.   As a result of being without adequate heat in mid winter, plaintiff endured extreme mental stress and cold.

146. As a proximate result of defendant's wrongful removal and lockout  from Kenmore Hall,  Plaintiff suffered compensatory damages as follows:

a.   she was denied living accommodations and food which she paid during the Spring semester of 2001 and had to live on the street except for about two weeks when charitable organizations advanced funds for accommodations and when she was hospitalized due to stress, cold and hunger caused by the defendant;

b.   suffered financial loss when she repaid a church out of her social security check after the church lent her funds for accommodations for a short period of time;

c.   Suffered from the loss of food when the defendant refused to provide food for which she had paid;

d.   suffered extreme stress, both mentally and physically as a result of her being forced to live on the street in the middle of winter;

25

e.    suffered illness and hospitalization expenses in the Edgewater Hospital due to the stress of cold, hunger and uncertainty;

f.    due to the cold, hunger and extreme physical and mental stress caused by defendant wrongful expulsion and removal of plaintiff from her living accommodations, her heart condition has deteriorated and she will suffer from additional heart pathology complications and a shortening of her life expectancy;

g.    due to the cold, hunger and extreme physical and mental stress caused by defendant's wrongful expulsion and removal of plaintiff from her living accommodations, her fybromylagia and osteoarthritis condition has deteriorated and she will suffer from additional mobility impairment complications, and an increased inability to use her hands and a shortening of her life expectancy;

h.    she was denied the ability to complete her education in paralegal studies;

i.    she was denied job opportunities available her with an education and degree as a paralegal;

j.    she was denied her personal property, including a refrigerator, her clothes and medicine for the winter of 2001 and went without medicine and clothes for the winter when defendant took these items during her removal from Kenmore Hall.

k.    as a result of Plaintiff's removal from Kenmore Hall, Plaintiff incurred physical damage to her person, and has suffered extreme physical pain and mental suffering.

147. As a result of Plaintiff's expulsion as a student and removal from the dormitory, Plaintiff incurred physical damage to

her, and has incurred physical pain and severe suffering, and severe mental anguish.

148. The defendant acted intentionally, wantonly, wilfully and in reckless disregard of the consequences upon Plaintiff by expelling plaintiff and by refusing to allow her to use voice recognition software in the computers made available to her.

149. The defendant knew or should have known that as a result if its wrongful and outrageous conduct, Plaintiff has suffered and will suffer in the future, emotional and mental anguish, humiliation, and serious physical stress.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff respectfully that this court:

a. Grant a temporary and permanent injunction enjoining defendants, their officers, successors, assigns, and all persons in active concert or participation with them, from engaging in any practice or activity which discriminates on the basis of disability and specifically from attempting to ban plaintiff from pursuing academic studies directly or indirectly;

b. Order defendant to reinstate plaintiff as a student at Loyola with full disability accommodation made available to her including a computer with voice recognition software and the ability to prepare typed class room notes on the basis of voice recognition;

c. Order defendants to institute and carry out policies, practices, and programs which provide equal opportunities for individuals with disabilities;

27

d.  award plaintiff her compensatory damages including an amount equal to her projected loss of income due to the defendant's wrongful expulsion of plaintiff and denial of disability accommodation, a refund of plaintiff's tuition room and board wrongfully obtained due to defendant's wrongful expulsion of plaintiff, compensatory damages for the property of the plaintiff taken by the defendant when plaintiff was removed from Kenmore Hall; and compensatory damages for extreme physical and mental pain and suffering due to defendant's wrongful conduct

e.  Award plaintiff punitive damages in an amount sufficient to deter defendant from its wilful violations against the plaintiff and other students who suffer from disability.

f.  Award plaintiff her attorneys fees and costs as provided by law; and

g.  for such other relief that the Court in its discretion may deem reasonable and appropriate.

### JURY TRIAL DEMANDED

The Plaintiff requests a jury trial on all questions of fact raised by the Complaint.

### COUNT III

1. Count III is an action against defendant under Title 5 City of Chicago Municipal Ordinance Code Section 12-150, for retaliation by the defendant against the plaintiff for plaintiff's complaints of building, housing and health violations of the City of Chicago Municipal Code relating to the defendant's premises at Simpson Hall and Kenmore Hall.

28

2.   Plaintiff incorporates paragraphs 1-9, 12,  17-27, 33-40; 52-54; 73-106; 108-110  in this Count III as if fully stated herein as paragraphs 3-71.

72.   Jurisdiction for this Count III is invoked pursuant to supplemental  jurisdiction pursuant to 28 U.S.C. 1367(a).

73.   The claims alleged in this Count III are so related to the claims under Counts I and II, which have original jurisdiction within the District Courts, that they form part of the same case or controversy.

74.   On or about August 24, 2000, three days after plaintiff moved into Simpson Hall, plaintiff requested that defendant repair Simpson Hall so that it would meet ADA Standards.

75.   On or about December 1, 2000, Plaintiff complained about the lack of ADA compliance at Simpson Hall and asked that Loyola make repairs to Simpson Hall so that it would be ADA compliant.

76.   On or about January 23, 2001,  Plaintiff complained in good faith to the City of Chicago Department of Building Inspections officials regarding the failure of Kenmore Hall to meet the City of Chicago standards for habitable living condition including, but not limited to, the lack of heat during winter, pealing plaster in the walls, the lack of operating elevators, the lack of smoke detectors, the lack of sound fire alarms, the lack of visual fire alarms and the failure of Kenmore Hall to meet the ADA Standards for the disabled.

77.   Plaintiff requested that repairs by made to Kenmore Hall comply with the City of Chicago Municipal Code and the ADA Standards.

78. At the time defendant moved plaintiff into Kenmore Hall, Kenmore Hall was under construction for rehabilitation and the defendant did not have authority from the City of Chicago to open Kenmore Hall to occupancy.

79. Shortly following plaintiff's complaint to the City of Chicago, on or about February 12, 2001, defendant expelled plaintiff and removed plaintiff from Kenmore Hall for one or more of the following reasons:

a. in retaliation for plaintiff's complaint to the City of Chicago's department of Building Inspections about defendant's violations of the City of Chicago building, housing and health municipal codes applying to units leased for habitation in the City of Chicago.

b. for requesting that the defendant repair Simpson Hall and Kenmore Hall in accordance with the requirements of the City of Chicago Municipal Code; and

c. for requesting that the defendant repair Simpson Hall and Kenmore Hall in accordance with the requirements of the ADA Standards.

80. Title 5, Section 12-150 prohibits a landlord from taking retaliatory action against a tenant, for complaint of a building, housing health or similar code violation, or requested the landlord to make repairs to the premises as required by a building code, health ordinance, other regulation or the residential agreement or from exercising any remedy provided by law.

81. As a proximate result of Defendant's wrongful removal and lockout of plaintiff from Simpson Hall and her removal to Kenmore Hall, plaintiff suffered compensatory damages as follows:

a. She was denied the right to live in a habitable building for which she had paid and lost the money which she had paid for accommodations at Simpson Hall;

b. She was required to live without adequate heat, without operating elevators, without mail delivery; without fire alarms and smoke detectors, and without an on site cafeteria;

c. she was denied convenient access to computer technology for her studies; and

d. As a result of being without adequate heat in mid winter, plaintiff endured extreme mental stress and cold.

82. As a proximate result of defendant's wrongful expulsion of plaintiff and wrongful removal from Kenmore Hall, Plaintiff suffered compensatory damages as follows:

a. she was denied accommodations and food which she paid during the Spring semester of 2001 and had to live on the street except for those occasions when charitable organizations advanced funds for accommodations;

b. suffered financial loss when she repaid a church out of her social security check after the church lent her funds for accommodations for a short period of time;

c. Suffered from the loss of food when the defendant refused to provide food for which she had paid;

31

d. suffered extreme stress, both mentally and physically as a result of her being forced to live on the street in the middle of winter;

e. suffered illness and hospitalization expenses in the Edgewater Hospital due to the stress of cold, hunger and uncertainty;

f. she was denied the ability to complete her education in paralegal studies;

g. she was denied job opportunities available her with an education and degree as a paralegal;

h. she was denied her personal property, including a refrigerator, her clothes and medicine for the winter of 2001 and went without medicine and clothes for the winter when defendant took these items during her removal from Kenmore Hall.

PRAYER FOR RELIEF

Wherefore plaintiff prays that the Court make the following award against the defendant:

a. award plaintiff twice her compensatory damages pursuant to Title 5 Section 12-150 of the City of Chicago Municipal Code, including an amount equal to her projected loss of income due to the defendant's wrongful expulsion of plaintiff and denial of disability accommodation, a refund of plaintiff's tuition room and board wrongfully obtained due to defendant's wrongful expulsion of plaintiff, compensatory damages for the property of the plaintiff taken by the defendant when plaintiff was removed from Kenmore Hall; and compensatory damages for extreme physical

32

and mental pain and suffering due to defendant's wrongful conduct.

b.   Award plaintiff punitive damages in an amount sufficient to deter defendant from its wilful violations against the plaintiff and other students who have been wrongfully retaliated against for complaining about building, housing and health code violations and for asking for repairs and ADA accommodations.

c.   Award plaintiff her attorneys fees and costs as provided by law and Title 5 Section 12-150 of the City of Chicago Municipal Code.

d.   for such other relief that the Court in its discretion may deem reasonable and appropriate.

## **JURY TRIAL DEMANDED**

The Plaintiff requests a jury trial on all questions of fact raised by the Complaint.

### COUNT IV

### INTERRUPTION OF TENANT OCCUPANCY BY LANDLORD

1. Count IV is an action against defendant under Title 5 City of Chicago Municipal Ordinance Code Section 12-160, for the unlawful ousting or disposing of plaintiff from Simpson Hall and Kenmore Hall without authority of law by removing plaintiff's possessions and locking her door.

2.   Jurisdiction for this Count IV is invoked pursuant to supplemental  jurisdiction pursuant to 28 U.S.C. 1367(a).

3.   The claims alleged in this Count III are so related to the claims under Counts I and II, which have original

33

jurisdiction within the District Courts, that they form part of the same case or controversy.

4.     Plaintiff, Maureen Therese Kenny, ("Kenny") is a citizen of the United States and is a resident of Cook County, State of Illinois.

5.     Loyola University of Chicago does business in the Northern District of Illinois, maintains Simpson Hall and Kenmore Hall as residence dormitories for students in the Northern District of Illinois, and is the District in which the Loyola maintains its principal administrative business office.

6.     At all relevant times Loyola has continuously been engaged in an industry affecting commerce within the meaning of Section 101(5) of the ADA, 42 U.S.C. Section 12181, and Section 107(7) of the ADA, 42 U.S.C. Section 12117(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. Section 2000e(g) and (h) covered entity under Section 101(2) of the ADA, 42 U.S.C. Section 12111(2).

7.     At all relevant times, Loyola has been a post graduate private school or other place of education within the meaning of 42 U.S.C. Section 12181(7)(J).

8.     At all times during from August 21, 2000 to the present, defendant owned or leased Simpson Hall and Kenmore Hall for the purpose of providing dormitory living quarters for students attending Loyola University in Chicago. Both Kenmore Hall and Simpson Hall are located within the City limits of Chicago, Illinois.

34

9.   Plaintiff paid in full for a dormitory room at Simpson Hall for the Fall, 2000 semester and the Spring 2001 semester at Loyola including a pre-paid meal plan at Loyola cafeterias.

10.   Plaintiff resided at defendant's Simpson Living and Learning Center ("Simpson Hall") from August 21, 2000 while she attended Loyola as a student until January 24, 2001, when she was moved by defendant to Kenmore Hall without Plaintiff's consent, against her will, and while she was not present.  From January 24, 2001 until on or about February 12, 2001, plaintiff resided at Kenmore Hall, until defendant caused plaintiff to be forcibly removed from Kenmore Hall without her consent onto the street.

11.   Defendant did not evict plaintiff from Kenmore Hall in accordance with the laws of the City of Chicago relating to eviction.

12.  On or about January 24, 2001, Defendant removed plaintiff's personal belongings from Simpson Hall to Kenmore Hall against her will and without her knowledge.

13.  On or about January 24, 2001, Defendant barred plaintiff from entering Simpson Hall by changing the lock on her door.

14.  On or about February 12, 2001, defendant removed plaintiff's personal property from Kenmore Hall, took possession of those properties and never returned those properties to the plaintiff.

13.  On or about January 24, 2001, Defendant barred plaintiff from entering Simpson Hall by changing the lock on her door.

14.  Defendant's removal of plaintiff's property from Simpson Hall to Kenmore Hall was without authority of law.

15.  Defendant's locking out of plaintiff from her living quarters at Simpson Hall was without authority of law.

16.  Defendant's removal of plaintiff's property from Kenmore Hall was without authority of law.

17.  Defendant's locking out of plaintiff from her living quarters at Kenmore Hall was without authority of law.

18.  Defendant's wrongful interruption of plaintiff's tenancy at Simpson Hall and Kenmore Hall is in violation of Title 5 of Section 12-160 of the City of Chicago Municipal Code.

19.  As a proximate result of Defendant's wrongful removal of plaintiff from Simpson Hall to Kenmore Hall plaintiff suffered compensatory damages as follows:

a.  She was denied the right to live in a habitable building for which she had paid and lost the money which she had paid for accommodations at Simpson Hall;

b.  She was required to live without adequate heat, without operating elevators, without mail delivery; without fire alarms and smoke detectors, and without an on site cafeteria;

c.  she was denied convenient access to computer technology for her studies; and

d.  As a result of being without adequate heat in mid winter, plaintiff endured extreme mental stress and cold.

20.  As a proximate result of defendant's wrongful removal of plaintiff from Kenmore Hall,  Plaintiff suffered compensatory damages as follows:

a. she was denied accommodations and food which she paid during the Spring semester of 2001 and had to live on the street except for those about two weeks when charitable organizations advanced funds for accommodations and when she was hospitalization due to stress, cold and hunger caused by the defendant;

b. suffered financial loss when she repaid a church out of her social security check after the church lent her funds for accommodations at a hotel in February of 2001, for approximately 1-2 weeks;

c. Suffered extreme hunger from the loss of food when the defendant refused to provide food for which she had paid;

d. suffered extreme stress, both mentally and physically as a result of her being forced to live on the street in the middle of winter;

e. suffered illness and hospitalization expenses in the Edgewater Hospital due to the stress of cold, hunger and uncertainty;

f. due to the cold, hunger and extreme physical and mental stress caused by defendant's wrongful removal of plaintiff, her heart condition has deteriorated and she will suffer from additional heart pathology complications and a shortening of her life expectancy;

g. due to the cold, hunger and extreme physical and mental stress caused by defendant's wrongful removal of plaintiff, her fybromylagia and osteoarthritis condition has deteriorated and she will suffer from additional mobility impairment

complications, and an increased inability to use her hands and a shortening of her life expectancy;

h.   she was denied her personal property, including a refrigerator, her clothes and medicine for the winter of 2001 and went without medicine and clothes for the winter when defendant took these items during her removal from Kenmore Hall.

i.   Plaintiff has incurred physical damage to her, and has endured physical pain and extreme and severe suffering, and extreme and severe mental anguish.

PRAYER FOR RELIEF

Wherefore plaintiff prays that the Court make the following award against the defendant:

a.   award plaintiff twice her compensatory damages as provided by Title 5 Section 12-160 of the Chicago Municipal Code including an amount equal to her projected loss of income due to the defendant's wrongful expulsion of plaintiff and denial of disability accommodation, a refund of plaintiff's tuition room and board wrongfully obtained due to defendant's wrongful expulsion of plaintiff, compensatory damages for the property of the plaintiff taken by the defendant when plaintiff was removed from Kenmore Hall; and compensatory  damages for extreme physical and mental pain and suffering due to defendant's wrongful conduct

b.   Award plaintiff punitive damages in an amount sufficient to deter defendant from its wilful violations against the plaintiff and other students who have been wrongfully removed from living accommodations by the defendant.

c.   Award plaintiff her attorneys fees and costs as provided by law; and Title 5 Section 12-180 of the City of Chicago Municipal Code; and

d.   for such other relief that the Court in its discretion may deem reasonable and appropriate.

### JURY TRIAL DEMANDED

The Plaintiff requests a jury trial on all questions of fact raised by the Complaint.

MAUREEN THERESE KENNY

Charles Drake Boutwell
3075 Plum Island Drive
Northbrook, Ill 60062
847-272-2126