# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 1006 | **DATE** | February 20, 2003 |
| **CASE TITLE** | Kenny v. Loyola | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Loyola's motion to dismiss [18-1] Count I and II and strike certain portions of Ms. Kenny's complaint [18-2] is DENIED. Pursuant to the agreement of the parties, Counts III and IV, which are based on alleged violations of Chicago's Municipal Code, are dismissed with prejudice. Enter Memorandum and Order.

(11) ■ [For further detail see order on the reverse side of the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | FEB 24 200? | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 73 |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | 03 FEB 21 PM 3:51 | date mailed notice | |
| RTS | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MAUREEN THERESE KENNY, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | 02 C 1006 |
| | ) | |
| LOYOLA UNIVERSITY OF CHICAGO, | ) | |
|     Defendant. | ) | |

DOCKETED
FEB 2 4 2003

## MEMORANDUM AND ORDER

Maureen Kenny was a student at Loyola University of Chicago from August of 2000 through February of 2001 in the School for Paralegal Studies. She contends that Loyola failed to accommodate her disabilities in violation of the Americans With Disabilities Act, 42 U.S.C. § 12110, *et seq.*, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*[1] Loyola seeks to dismiss Ms. Kenny's complaint under Rule 12(b)(6). Alternatively, it seeks to strike certain paragraphs from the complaint under Rule 12(f). For the following reasons, Loyola's motion is denied in its entirety.

I. **Background**

The following facts are drawn from Ms. Kenny's complaint and are accepted as true for purposes of Loyola's motion to dismiss. When Ms. Kenny was a student at Loyola, she suffered from a variety of medical problems, including hearing and visual impairments, fibromyalgia syndrome, osteoarthritis, hypertension, morbid obesity, edema, carpal tunnel syndrome, and mobility challenges. These problems affected her ability to use the bathroom, prepare handwritten notes, type papers, complete homework, listen to lectures, and hear fire alarms

---

[1] Ms. Kenny also sought relief for alleged violations of Chicago's Municipal Code. She has agreed to voluntarily dismiss these claims.

outside her dormitory room. They also limited her ability to walk more than 200 feet without rest. In fact, as of the time that the complaint was filed, Ms. Kenny used a wheelchair for mobility.

Ms. Kenny was also aided by her service dog, Mr. Lex. Because Ms. Kenny walked slowly with a cane and could not carry any other items, Mr. Lex carried her purse and books in a canine back pack. He also picked up any items that Ms. Kenny dropped, such as a bar of soap or hairbrush, and helped her access stairs and utilize bus transportation. Finally, he barked when a fire alarm went off or someone knocked on the door of Ms. Kenny's dormitory room to alert Ms. Kenny.

In the summer of 2000, Ms. Kenny asked Loyola to provide transportation for her and Mr. Lex so she could travel between her dormitory room and her classrooms. Loyola conditionally granted this request but then refused to allow Mr. Lex on the shuttle. Subsequently, it "purported to grant" her request again, but expelled her before it could do so.

In December of 2000, near the end of Ms. Kenny's first semester, she asked for: (1) a laptop computer with voice recognition software; (2) a visual fire alarm and TTD text phone in her dormitory room; (3) an area for rescue assistance in her dormitory; (4) a power assisted door for her dormitory room; (5) a wheelchair accessible bathroom with a tilted mirror, widened toilet stall with grab bars, a soap holder, a 63-inch hose and ADA-compliant showerhead, lever-style faucets, and a tub with a seat and grab bars; (6) cafeteria alterations for wheelchair accessibility; and (7) expedited cafeteria checkout. Loyola denied these requested accommodations.

During her first six months at Loyola, Ms. Kenny's dormitory was Simpson Hall. In late January, she was involuntarily moved to Kenmore Hall, a less desirable dormitory, because Mr.

Lex barked to alert her when someone was at the door. On that same day, Loyola expelled her. After an appeal hearing on February 12, 2001, Loyola forcibly evicted Ms. Kenny from her room in Kenmore Hall. This suit followed.

## II.    Discussion

### A.    Motion to Dismiss

#### 1.    Standard For a Rule 12(b)(6) Motion to Dismiss

In ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must assume the truth of all facts alleged in the complaint, construing the allegations liberally and viewing them in the light most favorable to the plaintiff. *See, e.g., McMath v. City of Gary*, 976 F.2d 1026, 1031 (7th Cir. 1992); *Gillman v. Burlington N. R.R. Co.*, 878 F.2d 1020, 1022 (7th Cir. 1989). Dismissal is properly granted only if it is clear that no set of facts which the plaintiff could prove consistent with the pleadings would entitle the plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Kunik v. Racine County, Wis.*, 946 F.2d 1574, 1579 (7th Cir. 1991), citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

The court will accept all well-pled factual allegations in the complaint as true. *Miree v. DeKalb County*, 433 U.S. 25, 27 n.2 (1977). In addition, the court will construe the complaint liberally and will view the allegations in the light most favorable to the non-moving party. *Craigs, Inc. v. General Electric Capital Corp.*, 12 F.3d 686, 688 (7th Cir. 1993). However, the court is neither bound by the plaintiff's legal characterization of the facts, nor required to ignore facts set forth in the complaint that undermine the plaintiff's claims. *Scott v. O'Grady*, 975 F.2d 366, 368 (7th Cir. 1992).

### 2. Has Ms. Kenny Been Substantially Limited in a Major Life Activity?

According to Loyola, Ms. Kenny's ADA and Rehabilitation Act claims must be dismissed because she has failed to allege that her disabilities substantially limited her ability to engage in a major life activity. The court disagrees. The ADA defines a "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); *see also* 28 C.F.R. § 35.104; *Bragdon v. Abbott*, 118 S.Ct. 2196, 2201 (1998). Proof of disability under subpart A involves three elements.

First, a "physical or mental impairment" is: (1) [a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine; or (2) [a]ny mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(h).

Second, "major life activities" refer to "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Id.* at § 1630.2(i). Finally, the requirement that the impairment "substantially limit" one or more major life activities of the individual means that the impairment must leave the individual either unable to perform a major life activity, or significantly restricted "as to the condition, manner or duration" of performance of that activity. 29 C.F.R. § 1630.2(j)(1). Determining whether a

plaintiff has a recognized disability is an individualized question which must be determined on a case-by-case basis. *Baert v. Euclid Beverage, Ltd.*, 149 F.3d 626, 631 (7th Cir. 1998).

Here, Ms. Kenny has alleged that she suffers from at least one "physical impairment" as that term is used in 42 U.S.C. § 12102(2)(A). Loyola nevertheless argues that her physical impairments fail to substantially limit a major life activity. Specifically, it notes that none of Ms. Kenny's problems – carpal tunnel syndrome, obesity, hypertension, and vision, hearing, and mobility problems – are inherently disabling. It also contends that Ms. Kenny's allegations are contradictory and undercut her claims of disability. The court can dispose of these arguments very briefly.

It is true that "[n]ot every impairment that affects an individual's major life activities is a substantially limiting impairment." *Knapp v. Northwestern University*, 101 F.3d 473, 481 (7th Cir.1996). Instead, to allege that an impairment "substantially limits" a major life activity, a plaintiff must assert that the impairment "considerabl[y]" or "to a large degree" interferes with a major life activity. *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002). As noted above, "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working" are major life activities. 9 C.F.R. § 1630.2(i).

Here, Ms. Kenny has alleged that when she was a student at Loyola, she could walk no more than 200 feet without resting, could not perform basic personal care tasks such as picking up a dropped bar of soap in the shower, and needed accommodations to enable her to take classes and use the bathroom. She also has alleged that her mobility, vision, and hearing problems necessitated the use of a service dog. These allegations are enough to survive a motion to

dismiss. When they are viewed in the light most favorable to Ms. Kenny, they explain how her impairments substantially limit the major life activities of caring for herself, performing manual tasks, walking, seeing, hearing, and learning.

With respect to Ms. Kenny's purportedly inconsistent allegations, Loyola notes that Mr. Lex both carried items for Ms. Kenny and accommodated her hearing problems by barking to alert her when someone knocked on her door. According to Loyola, a service dog assisting a hearing impaired person would never bark because, by definition, a hearing impaired person cannot hear a bark. At the motion to dismiss stage, however, the court must construe the allegations in the complaint in favor of Ms. Kenny. The court can easily envision a number of ways in which a bark could be helpful to a hearing impaired but not completely deaf person. For example, the bark could be louder than a knock, or Ms. Kenny could be closely attuned to the actions of her service dog. Because the court must make these kinds of assumptions at the motion to dismiss stage, Loyola's argument that Ms. Kenny pleaded herself out of court by alleging that Mr. Lex assisted her by barking fails.

Loyola also takes issue with the fact that Ms. Kenny requested wheelchair accessible accommodations when she did not use a wheelchair and, instead, utilized a service dog to assist her with her mobility limitations. According to Loyola, these allegations undermine Ms. Kenny's accommodation requests by showing that she was requesting accommodations she did not require. Again, the court disagrees, because all reasonable inferences must be drawn in favor of Ms. Kenny at this stage of the proceedings.

For example, it is entirely reasonable for an individual with a mobility impairment who is nevertheless not limited to a wheelchair to need accommodations such as grab bars by the tub

and toilet, a shower with a seat and hand-shower, and lever-style faucets. Indeed, the ADA Toilet Stall Compliance Materials specify accommodations for people who use wheelchairs or scooters *and* people who have walking, mobility, or balance limitations. *See* ADA Compliance Materials, The Americans With Disabilities Act Accessibility Guidelines Tech Sheet: Toilet Stalls, ADAAG 4.17 at 5 (1994). It is simply incorrect to say that only individuals who use a wheelchair or scooter are entitled to handrails, a modified height toilet, and similar accommodations mandated by the ADA and the Rehabilitation Act.

Loyola also contends that Ms. Kenny merely "wanted to bathe with her dog, but that preference certainly does not entitle her to demand wheelchair accommodations." (Reply at 3). Its position is that Ms. Kenny did not use a wheelchair when she was attending Loyola so she could not have required wheelchair accommodations in the bathroom. Again, however, just because a person does not utilize a wheelchair does not mean that they do not need an accessible bathroom. Without grab-bars or a seat in the tub, Ms. Kenny might well endanger herself. Without her service dog, she might well be precluded from retrieving a dropped bar of soap or a towel. Since the court has to construe the allegations in the complaint in favor of Ms. Kenny, it finds that she has successfully pleaded that her physical impairments substantially limit the major life activity of caring for herself.

In the interests of completeness, the court also acknowledges that this action is not the first time that Ms. Kenny has pursued a lawsuit against Loyola. However, a motion to dismiss is not the proper time to point out alleged inconsistencies between her current pleading and past pleadings. Any substantive differences may potentially have evidentiary value (a point on which

the court makes no determination), but certainly do not support dismissal of Ms. Kenny's complaint.

### 3. Was Ms. Kenny's Disability the Sole Cause of Loyola's Alleged Conduct as Required by The Rehabilitation Act?

In order to state a claim under the Rehabilitation Act, Ms. Kenny must allege that: (1) she is handicapped under the Act; (2) she is otherwise qualified for the benefit sought; (3) she was discriminated against solely by reason of her handicap; and (4) the program or activity in question receives federal financial assistance. *See, e.g., Mallett v. Wisconsin Div. of Vocational Rehabilitation*, 130 F.3d 1245, 1257 (7th Cir. 1997). Loyola contends that Ms. Kenny's Rehabilitation Act claim must be dismissed because she has failed to allege that she was denied treatment "solely by reason of [her] . . . handicap." *See* 29 U.S.C. § 794(a); *Mallett v. Wisconsin Div. of Vocational Rehabilitation*, 130 F.3d at 1257 ("The word solely provides the key: the discrimination must result from the handicap and from the handicap alone").

As pointed out by Loyola, Ms. Kenny alleges that she was expelled because of "charges" and "allegations" against her and because she had been disciplined when Mr. Lex barked to alert her that someone was at the door. Amended Complaint at ¶¶ 50, 51, 129 & 131. Loyola thus concludes that Ms. Kenny has failed to allege that her disabilities were the sole cause for her expulsion. Later in her complaint, however, Ms. Kenny also alleges that the charges brought against her were false and that the real reason for the charges and her expulsion was to avoid providing her with the requested accommodations. *Id.* at ¶ 141.

The court finds that these allegations, in essence, state that Ms. Kenny's disabilities were the reason why Loyola allegedly failed to provide her with accommodations and ultimately

-8-

expelled her. Thus, despite the lack of the magic word "solely," the court concludes that Ms. Kenny has alleged that she was denied treatment solely due to her handicap.

### B. Motion to Strike

Loyola asks the court to strike the allegations relating to wheelchair accommodations. It will doubtless not surprise the reader to learn that this request is based on the fact that Ms. Kenny did not use a wheelchair when she was at Loyola. As noted above, however, accessible bathrooms and other accommodations required by the ADA and Rehabilitation Act are available to individuals who are mobility impaired but not confined to a wheelchair.

Loyola also claims that Ms. Kenny's subsequent use of a wheelchair after her expulsion from Loyola is irrelevant and thus all allegations about her wheelchair use should be stricken. In the employment context, however, the Seventh Circuit has held that the progression of an impairment after an employee's resignation does not show that the individual was previously disabled, but a "present inability to walk more than one city block does provide a certain degree of credence to the claim that her [impairment] may have been 'substantially limiting' at the time at issue." *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 438 (7th Cir. 2000).

Ms. Kenny's present wheelchair use is relevant for the same reason: at the time of her expulsion she could walk no more than 200 feet with the aid of a cane and a service dog, and now she is confined to a wheelchair. Her present wheelchair use thus supports the conclusion that when she was at Loyola, she was substantially impaired in the major life activity of walking. Thus, the motion to strike is denied.

## III. Conclusion

For the above reasons, Loyola's motion to dismiss [18-1] Count I and II and strike certain portions of Ms. Kenny's complaint [18-2] is DENIED. Pursuant to the agreement of the parties, Counts III and IV, which are based on alleged violations of Chicago's Municipal Code, are dismissed with prejudice.

DATE: FEB 2 0 2003

Blanche M. Manning
United States District Judge

01cv1006.md